UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

Howard Broomfield,

    Petitioner,

v.

United States of America,

    Respondent.

Case No CR No. 95-0165-CBM

No. 18-CV-08434-CBM

Petitioner's Reply to the Government's Opposition Motion to Petitioner's 28 U.S.C. 2255 Second-in-Time Petition Based On A New Intervening Judgment

## FACTUAL BACKGROUND AND PRODURAL HISTORY

In February of 1996, a jury convicted Petitioner Howard Broomfield of twelve counts of narcotics related charges under 21 U.S.C. § 846, 21 U.S.C. § 841, and 21 U.S.C. § 848. On June 17, 1996 the court sentenced Petitioner to life in prison. Petitioner appealed his federal sentence to the Ninth Circuit on June 20th, 1996. On August 27th, 1998 the Ninth Circuit affirmed Petitioner's conviction and sentence in an unpublished decision, <u>United States v. James Broomfield</u>, 1998 WL 551971 (9th Cir. 1998).

Petitioner filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 on January 13th, 2000, claiming <u>inter alia</u>, ineffective assistance of counsel for failure

to object to jury instruction regarding the "Supervisor" element of the CCE charge, among other issues (CR 95-165-CBM, Dkt No. 508).

On November 5th, 2004, the district court (The Honorable Consuelo B. Marshall) granted the motion in part, and the government appealed, (CV-00-586-CBM, Dkt No. 20). On February 9th, 2006, the Ninth Circuit reversed the district court. Broomfield, 172 Fed appx. 743 *1.

Now Comes, Petitioner Howard Broomfield, pro se, with his reply to the governments opposition motion to Petitioner's 28 U.S.C. 2255 "Second-in-Time" Petition based on new intervening Judgement. Petitioner submits that his 28 U.S.C. 2255 "Second-in-Time" Petition is not a Second or Successive Petition if the Petition challenges a new judgement intervening between the two habeas petitions, See **United States v. Buenrosto,** 638 F. 3d 720, 725 (9th Cir. 2011) also, **Barron v. United States**, 16-70654 (Petitioner's may file Second-in-Time Petitions based on events that do not occur until after Petitioner's first petition is concluded). Where there is a new judgement intervening between the two habeas petitions, an application challenging the resulting new judgement is not Second or Succesive at all.

On page 4 of the government's opposition motion the government argued that Petitioner could have argued in his initial 28 U.S.C. 2255 petition back in January of 2000, the fact that prior conviction under California Health and Safety Code Section 11378 did not qualify as a federal felony drug offense. Petitioner submits that the argument could not have been raised at an

2

earlier time because it was not law at the time. It became law on August 29th 2017 when U.S. v. Ocampo-Estrada made it law. The 11378 argument was not ripe at the time Petitioner filed his initial 28 U.S.C, 2255 Petition. Therefore, based on the new intevening judgment, Petitioner's 1984 case that the government used to enhance Petitioner pursuant to 21 U.S.C. § 851 no longer qualifies as a felony drug offense that can be used for enhancement purposes pursuant to 21 U.S.C. § 851 because The Ninth Circuit Court of Appeals has determined that California Health and Safety Code § 11378 is overbroad and divisible, See **United v. Luis Ocampo-Estrada**, 868 F. 3rd 1101; 873 F. 3d 661, 2017, U.S. App. Lexis 16511.

See also **Elisio Atenia Lorenzo v. Jefferson B. Sessions lll**, United States Court of Appeals for The Ninth Cicuit, 2018 U.S. App. Lexis 24533 (No. 15-70814) August 29th, 2018 "Stating the same"... Exhibit A. Petitioner further argues that the sentencing Judge never inquired before sentencing whether the Petitioner affirms or denies (the prior conviction), the Sentencing Judge also never informed Petitioner to the fact that any challenge to a prior conviction is waived if not made before sentencing; which is a strict compliance with the procedural aspects of Section § 851(b). the § 851(b) colloquy is not merely a procedural requirement ment, it serves a functional purpose to place the procedural onus on the district court to ensure defendants are fully aware of their rights. See **United States v. Rodriguez**, 851 F 3d 931, 946 (9th Cir. 2017).

The Ninth Circuit Court of Appeals was clear and "Matter of

3

fact" in U.S. v. Ocampo-Estrada when it ruled that the Statute in California Health Code 11378 is overbroad and divisible and cannot be used for enhancement purposes under Federal Statute pursuant to 21 U.S.C. § 851.

## CONCLUSION

For the foregoing reasons Petitioner prays that this honorable court grants his 28 U.S.C. 2255 "Second-in-Time" Motion, a motion that is deemed a sufficient Avenue by the Ninth Circuit Court of Appeals. Petitioner further prays that this honorable court resentence him and not apply the § 851 enhancement due to the fact that 11378 of California Health and Safety Code is overbroad and divisible and does not qualify as a "felony drug offense" within the meaning of 21 U.S.C. § 841(b)(1)(A) and 802(44).

Dated: April 4th, 2019

**See Exhibit A**

Respectfully Submitted

*Howard Broomfield*
Howard Broomfield
Reg. No. 03205-112
FCI Victorville Medium 1
P.O. Box 3725
Adelanto, CA 92301

## CERTIFICATE OF SERVICE

I, Howard Broomfield, hereby certify that I have served a true and correct copy of the following. This action is deemed filed at the time it was delivered to prison authorities for forwarding, See **Houston v. Lack**, 101 L. Ed 2d 245 (1988), upon the defendant of record by placing the motion in a sealed postage prepaid envelope addressed to:

| | |
|---|---|
| The Clerk of the Court for the Honorable Judge Consuelo B. Marshall, United States District Court, Judge for the Central District of California, 255 East Temple Street, Room 180 LOs Angeles, California 90012 | Assistant United States Attorney, 1200 United States Courthouse, 312 North Spring Street, Los Angeles, California 90012 |

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

Dated: April 4th, 2019

Respectfully Submitted

*Howard Broomfield*
Howard Broomfield
Reg. No. 03205-112
FCI Victorville Medium 1
P.O. Box 3725
Adelanto, California 92301

# EXHIBIT A

Persuading Case Law

<u>Elisio Atenia Lorenzo</u> v. Jefferson Session lll,

United State Court of Appeals for the Ninth Circuit

2018 U.S. App. Lexis 24533 (No. 15-70814) August 29th, 2018

---

**ELISIO ATENIA LORENZO, Petitioner, v. JEFFERSON B. SESSIONS III, Attorney General, Respondent.**
**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**
**2018 U.S. App. LEXIS 24533**
**No. 15-70814**
**August 29, 2018, Filed**

---

**Notice:**

Decision text below is the first available text from the court; it has not been editorially reviewed by LexisNexis. Publisher's editorial review, including Headnotes, Case Summary, Shepard's analysis or any amendments will be added in accordance with LexisNexis editorial guidelines.

Opinion

[*1] On Petition for Review of an Order of the

Board of Immigration Appeals

Argued and Submitted February 15, 2018

Pasadena, California

Filed August 29, 2018

Before: Sidney R. Thomas, Chief Judge, and Raymond C.

Fisher and Carlos T. Bea, Circuit Judges. *

Opinion by Judge Fisher

*This case was submitted to a panel that included Judge Stephen Reinhardt. Following Judge Reinhardt's death, Judge Bea was drawn by lot to replace him. Ninth Circuit General Order 3.2h. Judge Bea has reviewed all case materials.

2 ATENIA LORENZO V. SESSIONS

**SUMMARY \*\***

**Immigration**

The panel granted Elisio Atenia Lorenzo's petition for review of a decision of the Board of Immigration Appeals that found Lorenzo removable for a controlled substance offense, holding that: 1) where a state statute contains two layers of disjunctive lists, the analysis outlined in *Taylor v. United States*, 495 U.S. 575 (1990), for applying the categorical approach, applies to both layers of the statute and must be performed twice; and 2) a methamphetamine conviction under California

CIRHOT                                             1

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Health & Safety Code §§ **11378** or 11379(a) does not qualify as a controlled substance offense under 8 U.S.C. § 1227(a)(2)(B)(i), and remanded.

The panel explained that § **11378** makes it unlawful to possess for sale a controlled substance specified in certain subdivisions of California Health & Safety Code § 11055, and that § 11379(a) makes it unlawful [*2] to transport, import, sell, furnish, administer, or give away a controlled substance specified in certain subdivisions of § 11055. Section 11055, in turn, identifies a list of substances, including methamphetamine and its isomers. The Controlled Substances Act likewise includes methamphetamine and its isomers.

However, the panel concluded that the California definition of methamphetamine is broader than the federal definition because the California definition includes both

**This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

ATENIA LORENZO V. SESSIONS 3

geometric and optical isomers of methamphetamine, while the CSA includes optical isomers, but not geometric isomers. Accordingly, the panel held that the California definition is overbroad under the first step of the categorical approach.

The panel recognized that, in applying the first step of the categorical approach in this case, it had to examine a disjunctive list within another disjunctive list. The panel explained that it was therefore not enough to conclude, as this court had in *United States v. Martinez-Lopez*, 864 F.3d 1034 (9th Cir. 2017) (en banc), that California's disjunctive list of controlled substances is overbroad but divisible. Rather, in this instance, [*3] another *Taylor* analysis - addressing whether California's disjunctive list of types of methamphetamine is overbroad and, if so, divisible - was also required.

Next, the panel held that the overbroad methamphetamine element of §§ **11378** and 11379(a) is not divisible, observing that, under California law, geometric and optical isomers of methamphetamine are alternative means of committing a single offense, not alternative elements of committing several offenses.

Having concluded that the California statute is overbroad and not divisible with respect to the overbroad element, the panel explained it could not apply the modified categorical approach to determine whether Lorenzo's convictions involved a type of methamphetamine covered by the CSA. As a result, the panel concluded that Lorenzo's convictions under §§ **11378** and 11379(a) do not qualify as controlled substance offenses that render him removable under 8 U.S.C. § 1227(a)(2)(B)(i).

4 ATENIA LORENZO V. SESSIONS

Because the immigration judge and BIA did not address whether Lorenzo was removable on the ground that his

§ 11379(a) conviction constitutes an illicit trafficking aggravated felony, the panel did not address that question. However, the panel noted that, if the BIA addresses the government's aggravated [*4] felony theory on remand, it should consider whether that theory suffers from the same flaw as the government's theory of removability under 8 U.S.C.

§ 1227(a)(2)(B)(i).

**COUNSEL**

Benjamin F. Aiken (argued), Orrick Herrington & Sutcliffe LLP, Washington, D.C.; Cathy C. Shyong,

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Orrick Herrington & Sutcliffe LLP, Menlo Park, California; Karen Johnson-McKewan, Orrick Herrington & Sutcliffe LLP, San Francisco, California; for Petitioner.

Scott G. Stewart (argued), Washington, D.C., for Respondent.

**OPINION**

FISHER, Circuit Judge:

This case raises a novel yet straightforward question in our application of *Taylor v. United States*, 495 U.S. 575 (1990): whether the *Taylor* analysis must be performed twice if a state statute contains two layers of disjunctive lists. We hold *Taylor* applies to both layers of the statute. Following this approach, we conclude the definition of "methamphetamine" applicable to convictions under California Health & Safety Code §§ **11378** and 11379(a) is

ATENIA LORENZO V. SESSIONS   5

broader than the definition of methamphetamine under the federal Controlled Substances Act, 21 U.S.C. § 812. Under the first step in the categorical approach, therefore, a conviction for a methamphetamine offense under §§ **11378** or 11379(a) does not qualify as a "controlled substance" violation under 8 U.S.C. § 1227(a)(2)(B)(i). We further conclude the methamphetamine element applicable [*5] to a conviction under §§ **11378** or 11379(a) is not divisible, because the different varieties of methamphetamine covered by California law are alternative means of committing a single crime rather than alternative elements of separate crimes. We therefore do not apply the modified categorical approach. Because the methamphetamine element of §§ **11378** and 11379(a) is overbroad and the modified categorical approach does not apply, we hold a methamphetamine conviction under §§ **11378** or 11379(a) does not qualify as a controlled substance offense under 8 U.S.C. § 1227(a)(2)(B)(i). Accordingly, we hold Lorenzo is not removable for the reasons stated by the BIA. 1

I.

Lorenzo, a native and citizen of the Philippines, entered the United States in 1983 and has lived in this country as a lawful permanent resident since that time. In 2013, he pled nolo contendere to possession of methamphetamine, in violation of § **11378**, and transportation of methamphetamine, in violation of § 11379(a). The record of conviction does not identify the type of methamphetamine involved, and, under California law, "methamphetamine" is broadly defined to include "[m]ethamphetamine, its salts,

1Unless otherwise noted, all further statutory citations are to the California Health and Safety Code.

6 ATENIA LORENZO V. [*6] SESSIONS

isomers, and salts of its isomers." § 11055(d)(2). Lorenzo was sentenced to a year in jail and probation.

The Department of Homeland Security initiated removal proceedings against Lorenzo because of his 2013 state convictions. The notice to appear charged Lorenzo with removability under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(A)(iii), on the ground that his § 11379(a) conviction constituted an aggravated felony under 8 U.S.C. § 1101(a)(43)(B), which defines the term "aggravated felony" to include, among other things, "illicit trafficking in a controlled substance, including a drug trafficking crime." Alternatively, and as relevant here, the notice to appear charged Lorenzo with removability under § 237(a)(2)(B)(i) of the INA, 8 U.S.C. § 1227(a)(2)(B)(i), on the ground that his §§ **11378** and 11379(a) convictions constituted violations of state law "relating to a controlled substance."

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Lorenzo moved to terminate removal proceedings, contending his methamphetamine convictions did not necessarily involve a controlled substance as defined by federal law. Specifically, he argued the definition of methamphetamine under California law is broader than the definition of methamphetamine under the federal Controlled Substances Act (CSA), because the CSA's definition includes only optical isomers of methamphetamine, whereas California law includes both optical and geometric [*7] isomers of methamphetamine.

An immigration judge (IJ) denied Lorenzo's motion and ordered him removed, concluding that Lorenzo's convictions qualified as controlled substance offenses under 8 U.S.C. § 1227(a)(2)(B)(i). The BIA adopted and affirmed the IJ's decision under *Matter of Burbano*, 20 I. & N. Dec.

ATENIA LORENZO V. SESSIONS   7

872 (BIA 1994), while also providing its own analysis. Lorenzo timely petitioned for review.

**II.**

We review the BIA's determination of purely legal questions de novo, *see Vasquez-Zavala v. Ashcroft*, 324 F.3d 1105, 1107 (9th Cir. 2003), including whether a particular conviction under state law is a removable offense, *seeArellano Hernandez v. Lynch*, 831 F.3d 1127, 1130 (9th Cir. 2016), and whether a statute is divisible, *see United States v.Martinez-Lopez*, 864 F.3d 1034, 1039-40 (9th Cir. 2017) (en banc) (citing *Almanza-Arenas v. Lynch*, 815 F.3d 469, 477 (9th Cir. 2016) (en banc)).

**III.**

We hold Lorenzo's methamphetamine convictions under §§ **11378** and 11379(a) do not qualify as grounds for removal under 8 U.S.C. § 1227(a)(2)(B)(i).

**A.**

We use "a three-step analysis" to determine whether a state conviction qualifies as a controlled substance offense under federal law. See *Martinez-Lopez*, 864 F.3d at 1038. First, we determine whether state law bars "the same amount of or less conduct than" federal law. *Id.* (quoting *UnitedStates v. Hernandez*, 769 F.3d 1059, 1062 (9th Cir. 2014)). If so, then the state conviction is a categorical match, and the state conviction is a ground for removability. *See id.* If the state law encompasses more conduct than the federal law, however, the state conviction does [*8] not qualify as a controlled substance offense under the first step in the categorical approach. In that case, we determine whether the state law is divisible - i.e., whether the overly broad element sets out

8 ATENIA LORENZO V. SESSIONS

alternative means of committing a single crime or alternative elements of committing two or more distinct crimes. *See id.* at 1038-39. At step three, if the statute is divisible, we employ the modified categorical approach, where we may look to documents in the record of conviction, but not the particular facts underlying the conviction, to determine whether the conviction qualifies. See *Mathis v. UnitedStates*, 136 S. Ct. 2243, 2249 (2016). If the statute is overbroad and not divisible, then the conviction cannot be a ground for removal. *See id.* at 2248-49.

**B.**

We begin by applying the first step in the categorical approach, determining whether the statutes of conviction are broader than federal law.

Section **11378** makes it a crime to "possess[] for sale a controlled substance that . . . is specified in subdivision (d), (e), or (f) . . . of Section 11055." Section 11379(a) makes it unlawful to "transport[],

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

import[] into this state, sell[], furnish[], administer[], or give[] away . . . any controlled substance which is . . . specified in subdivision (d) or (e) . . .

of Section 11055." Section 11055, in turn, identifies [*9] a list of Schedule II substances, including, as relevant here, "[m]ethamphetamine, its salts, isomers, and salts of its isomers." § 11055(d)(2). Section 11033 further provides that the term "isomer," unless otherwise defined, "includes optical and geometrical (diastereomeric) isomers." Thus, under California law, a methamphetamine conviction under §§ **11378** or 11379(a) may involve methamphetamine or it may involve methamphetamine's "salts, isomers, [or] salts of its isomers," including both "optical and geometrical

. . .

isomers."

ATENIA LORENZO V. SESSIONS 9

The CSA likewise applies to "[a]ny substance" that "contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers." 21 U.S.C. § 812 Schedule II(c), Schedule III(a)(3). With respect to methamphetamine, however, the CSA applies only to optical isomers, not geometric isomers.

Under 21 U.S.C. § 802(14):

The term "isomer" means the optical isomer, except as used in schedule I(c) and schedule II(a)(4). As used in schedule I(c), the term "isomer" means any optical, positional, or geometric isomer. As used in schedule II(a)(4), the term "isomer" means any optical or geometric isomer.

Methamphetamine falls under Schedules II(c) ("any injectable liquid which contains any quantity of methamphetamine, [*10] including its salts, isomers, and salts of isomers") and III(a)(3) ("Any substance (except an injectable liquid) which contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers."). Thus, for purposes of methamphetamine, the CSA covers only optical isomers. Federal law extends to geometric isomers with respect to substances listed on Schedules I(c) and II(a)(4), but methamphetamine is not included on those schedules.

We have no reason to believe that these distinctions between California and federal law are immaterial. Both California law and federal law go to great lengths to specify the types of isomers covered for specific controlled substances. California law, for example, carefully specifies the controlled substances for which isomers are covered at all. These substances are opiates; opium derivatives;

10 ATENIA LORENZO V. SESSIONS

hallucinogenic substances, such as cannabis, peyote and psilocybin; depressants; cocaine base; opium; ecgonine; stimulants, such as amphetamine and methamphetamine; dimethylamphetamine; N-ethylmethamphetamine; gamma hydroxybutyric acid; and fenfluramine. See §§ 11054(b), (c), (d), (e), (f), 11055(b)(1)-(2), (b)(7), (c), (d)(1), (d)(2), (d)(3), [*11] (d)(4), (e), 11056(b), (c)(11), 11057(d), (e), (f).

Next, like federal law, California law carefully specifies the *types* of isomers covered for each controlled substance. Under California's default rule, both optical and geometric isomers are covered. See § 11033. But, like federal law, the California statutes specify exceptions to the default rule. Section 11054(d), relating to hallucinogenic substances, for instance, expands the default definition, stating that, "for purposes of this subdivision only, the term 'isomer' includes the optical, position, and geometric isomers." See also §§ 11056(b) (stimulants) (including "isomers (whether optical, position, or geometric)"), 11057(e) (fenfluramine) (same), (f) (stimulants) (same). Other

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

provisions narrow the default definition, specifying that only optical isomers are included. *E.g.*, §§ 11054(d)(20) (including "delta 1 cis or trans tetrahydrocannabinol, and their optical isomers; delta 6 cis or trans tetrahydrocannabinol, and their optical isomers; delta 3,4 cis or trans tetrahydrocannabinol, and its optical isomers"), 11055(d)(1) ("Amphetamine, its salts, optical isomers, and salts of its optical isomers."). **2** In short, both

**2**A comparison of California's statutory treatment of amphetamine [*12] and methamphetamine is illustrative. These substances are listed immediately next to one another in § 11055(d), but with respect to amphetamine, only optical isomers are specified. *Compare* § 11055(d)(1) ("Amphetamine, its salts, *optical* isomers, and salts of its *optical* isomers." (emphasis added)), *with* § 11055(d)(2) ("Methamphetamine, its salts, isomers, and salts of its isomers.").

ATENIA LORENZO V. SESSIONS   11

California law and federal law carefully identify the types of isomers included for various controlled substances. California law includes geometric isomers of methamphetamine, but federal law does not. **3**

On its face, therefore, the California definition of methamphetamine is broader than the federal definition. Whereas the former includes geometric isomers of methamphetamine, the CSA does not. Accordingly, California law is facially overbroad under the first step in the categorical approach. *See Martinez-Lopez*, 864 F.3d at 1038.

The government challenges this conclusion on two grounds, neither of which is persuasive. First, the government contends Lorenzo waived this issue by failing to raise it in his opening brief before this court. Lorenzo's opening brief, however, plainly argued that California law is overbroad because it "prohibits [*13] both optical and geometric isomers of all listed controlled substances," whereas the CSA "punishes the possession of optical isomers alone." The government's waiver argument, therefore, is without merit.

Second, the government argues Lorenzo's convictions qualify as controlled substance offenses in light of *UnitedStates v. Vega-Ortiz*, 822 F.3d 1031 (9th Cir. 2016). There, the defendant argued that California law was broader than federal law because federal law contains a provision requiring the Attorney General to exclude from the CSA's

**3**The record does not tell us *why* California has elected to include geometric isomers with respect to a broader range of controlled substances than the CSA, but it has done so. In the absence of any evidence - either in the record or subject to judicial notice - to suggest that this distinction is not material, we must assume that it is.

12 ATENIA LORENZO V. SESSIONS

controlled substance schedules certain non-narcotic substances that are lawfully sold over the counter, without a prescription, under the federal Food, Drug, and Cosmetic Act. *See* 21 U.S.C. § 811(g)(1). In accordance with this statutory requirement, the Attorney General has promulgated 21 C.F.R. § 1308.22, which excludes 17 over-the-counter pharmaceutical products from the CSA schedules, including Levmetamfetamine (l-Desoxyephedrine), [*14] or "L-meth," a substance used in a nasal decongestant produced by Aphena Pharma and in Vicks Vapolnhaler, sold by Procter & Gamble Co. Noting that no similar exceptions apply under California law, the defendant in *Vega-Ortiz* argued California law was "fatally overbroad because it criminalizes methamphetamine in all its forms, including its salts, isomers, and salts of its isomers without containing an exception for pharmaceutical products that contain 'L-meth,' although federal law excludes a particular product containing L-meth." *Vega-Ortiz*, 822 F.3d at 1034.

CIRHOT                                      6

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

We rejected the defendant's argument:

Vega-Ortiz . . . maintains that the federal regulation excluding a particular product containing L-meth from the schedule of federal controlled substances renders California's definition of methamphetamine broader than the definition of controlled substances in the Controlled Substances Act. However, in addressing a similar argument regarding an exemption for "administering" controlled substances that existed under federal law but not Washington state law, we focused on whether the defendant showed a "realistic probability" that a person would be prosecuted for the offense that assertedly

ATENIA LORENZO V. SESSIONS   13

rendered the state statute [*15] overbroad. *UnitedStates v. Burgos-Ortega*, 777 F.3d 1047, 1054-55 (9th Cir. 2015); *see also Gonzalesv. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) ("[T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires . . . a realistic probability . . . that the state would apply its statute to conduct that falls outside the generic definition of a crime. . . ."). Applying this analysis to the facts here, to succeed on his claim Vega-Ortiz would need to show a "realistic probability" that he would be prosecuted under § **11378** for possession of the excluded product containing L-meth. *Burgos-Ortega*, 777 F.3d at 1054. He has failed to do so. As in *Burgos-Ortega*, § **11378** is not "overbroad on its face" and "does not expressly include conduct not covered by the generic offense, but rather is silent as to the existence of a parallel [L-meth] exception." 777 F.3d at 1055. Thus, Vega-Ortiz's overbreadth arguments are unavailing, and we conclude that the district court properly applied the modified categorical approach to § **11378**.

*Id.* at 1035-36 (first alteration added).

The government's reliance on *Vega-Ortiz* is misplaced. *Vega-Ortiz* expressly distinguished a case, such as this one, in which the California statute is overbroad *on its face*. "Where, as here, a state statute explicitly defines a crime more broadly than the generic definition, [*16] no 'legal imagination,' is required to hold that a realistic probability

14 ATENIA LORENZO V. SESSIONS

exists that the state will apply its statute to conduct that falls outside the generic definition of the crime. The state statute's greater breadth is evident from its text." *UnitedStates v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (en banc) (citation omitted). "[W]hen '[t]he state statute's greater breadth is evident from its text,' a defendant may rely on the statutory language to establish the statute as overly inclusive." *United States v. Vidal*, 504 F.3d 1072, 1082 (9th Cir. 2007) (en banc) (citation omitted). Here, because the mismatch between the federal and state statutes is apparent on the face of the statutes, such that no rational interpretation of either statute would reconcile the two, Lorenzo is not required to "point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Duenas-Alvarez*, 549 U.S. at 193.

We similarly reject the reasoning of the IJ and the BIA. The IJ concluded California and federal law were a match under the first step in the categorical approach because geometric isomers of methamphetamine do not exist. The IJ, however, did not substantiate that conclusion, the BIA did not adopt that rationale and the government does not advance [*17] a similar argument here. Nor is there evidence in the record to show that geometric isomers of methamphetamine do not in fact exist.

The BIA, in turn, reasoned that, under *Matter ofFerreira*, 26 I. & N. Dec. 415 (BIA 2014),

CIRHOT                                              7

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

to defeat a charge of removability for a controlled substance violation based on a state law that criminalizes substances that may not be within the purview of the CSA, the respondent must present a realistic probability that the state would prosecute

ATENIA LORENZO V. SESSIONS 15

such conduct. Here, although queried by the Immigration Judge, the respondent has presented no evidence of any cases in which a particular isomer was isolated for prosecution, rather than the court using the generic term methamphetamine.

But we are not bound by *Ferreira* in this case. Although *Ferreira*, 26 I. & N. Dec. at 420-21, concluded an individual must point to cases in which the state courts applied the statute of conviction in a nongeneric manner even in the case of a facially overbroad statute, we do not accord deference to that conclusion under either *Chevron U.S.A. Inc. v.Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), or *National Cable & Telecommunications Ass'n v.Brand X Internet Services*, 545 U.S. 967 (2005). Deference applies under *Chevron* and *Brand X* only "[w]hen a court reviews an agency's construction of the statute which it administers." *Chevron*, 467 U.S. at 842. Here, because *Ferreira*'s holding was an interpretation [\*18] of *Moncrieffe v. Holder*, 569 U.S. 184, 206 (2013), and *Duenas-Alvarez*, 549 U.S. at 193, not an interpretation of the INA, no deference is owed. **4**

We recognize that, in applying the first step in the categorical approach in this case, we have had to examine a disjunctive list within another disjunctive list. At the more general level, we must examine the disjunctive list of drug

**4**The government, moreover, does not ask us to accord deference to *Ferreira* on this question, and other courts have not done so. *See, e.g., Hylton v. Sessions*, 897 F.3d 57, 64-65 (2d Cir. 2018) (rejecting *Ferreira* without according deference); *Swaby v. Yates*, 847 F.3d 62, 66 (1st Cir. 2017) (same); *Vazquez v. Sessions*, 885 F.3d 862, 873-74 (5th Cir. 2018) (agreeing with *Ferreira* without according deference).

16 ATENIA LORENZO V. SESSIONS

types - e.g., cocaine, heroin, methamphetamine - covered by California law. *See Martinez-Lopez*, 864 F.3d at 1040- 41 (examining that disjunctive list and concluding that the drug types constitute alternative elements under California law). At the more specific level, however, California law also includes disjunctive lists within a drug type, listing, for example, several types of methamphetamine - methamphetamine, its salts, its optical and geometric isomers, and salts of its isomers. *See* §§ 11033, 11055(d)(2).

Although we may not have expressly addressed this situation before, it is apparent that, when this situation arises, we must conduct a *Taylor* analysis with [\*19] respect to both disjunctive lists. It is not enough to determine that §§ **11378** and 11379(a) are overbroad and divisible with respect to the types of controlled substances they cover, because the methamphetamine element itself contains a disjunctive list. As a result, the question addressed through the *Taylor* analysis - whether Lorenzo was convicted of possessing or transporting a controlled substance covered under the federal CSA - requires that the *Taylor* analysis be conducted a second time. If California's definition of methamphetamine is broader than the definition under federal law, Lorenzo's convictions related to methamphetamine may not be convictions for a controlled substance under federal immigration law. Concluding, as in *Martinez-Lopez*, that California's disjunctive list of controlled substances is overbroad but divisible is not enough. Another *Taylor* analysis - addressing whether California's disjunctive list of types of methamphetamine is overbroad and, if so, divisible

- is required before we can ascertain whether Lorenzo has been convicted of a controlled substance

CIRHOT 8

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

offense covered by the CSA.

**C.**

Having concluded that methamphetamine convictions under [*20] §§ **11378** and 11379(a) are overbroad under the first step in the categorical approach, we must consider whether the methamphetamine element of each of these statutes is divisible. That is, we must determine whether the different types of methamphetamine covered by the statutes - including optical and geometric isomers - constitute alternative elements of separate crimes or alternative means of committing a single crime. See Martinez-Lopez, 864 F.3d at 1038-39.

We first look to "authoritative sources" in state law for a clear answer as to whether geometric and optical isomers of methamphetamine are alternative elements or alternative means. See Mathis, 136 S. Ct. at 2256; Martinez-Lopez, 864 F.3d at 1046. If a state court decision "definitively answers the question," we rely on that source. Mathis, 136 S. Ct. at 2256.

Here, we have a definitive state law answer: geometric and optical isomers of methamphetamine are alternative means of committing a single offense, not alternative elements of committing several state controlled substance offenses. The methamphetamine element, therefore, is not divisible.

In People v. Schroeder, 70 Cal. Rptr. 491, 499 (Ct. App. 1968), the California Court of Appeal explained that possession of different types of the same drug - e.g., different types of methamphetamine - "would constitute a single offense" under California law, because the drugs fell [*21] within the same classification in the drug schedule, which at that time was codified in Health & Safety Code § 11001. Possession of "[o]pium and its derivatives and compounds,"

for example, constituted a single offense. Id. (quoting former § 11001(a)(1)). So did possession of any type of drug within "[p]henathrene opium alkaloids, their salts, derivatives and compounds . . . morphine alkaloid, morphine salts, morphine compounds, and preparations." Id. (quoting former § 11001(b)(1)). Accordingly, charges for two counts of opium possession and seven counts of phenathrene opium alkaloid possession required consolidation into two counts. See id. The California Supreme Court cited this aspect of Schroeder with approval in In re Adams, 536 P.2d 473, 477 (Cal. 1975). Thus, under Schroeder and Adams, possession of multiple variations of the same drug constitutes a single crime under California law. Different types of methamphetamine, therefore, are alternative means of committing a single controlled substance offense, not alternative elements of distinct offenses.

This conclusion finds additional support in the way methamphetamine convictions are characterized by the California courts. The courts, for example, characterize a conviction as involving methamphetamine [*22] generally even when it may actually involve crystal methamphetamine - a salt of methamphetamine. See, e.g., People v. Buchanan, 204 Cal. Rptr. 3d 167, 170, 172 (Ct. App. 2016); People v.Logan, 2014 WL 971444, at *1-2 (Cal. Ct. App. Mar. 13, 2014); People v. Serb, 2012 WL 968082, at *2 (Cal. Ct. App. Mar. 22, 2012); People v. Laufasa, 115 Cal. Rptr. 3d 318, 319 (Ct. App. 2010); People v. Vizcarrondo, 2005 WL 2038215, at *1 (Cal. Ct. App. Aug. 25, 2005).

Indeed, charges may not allege the type of methamphetamine at issue unless a sentencing enhancement for crystal methamphetamine applies. California sentencing law provides that, "for an offense involving methamphetamine, the fact that the controlled substance is

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



the crystalline form of methamphetamine" constitutes an aggravating circumstance. Cal. Penal Code § 1170.74. Charges therefore may include a charge for a crime involving methamphetamine with a "special allegation," for sentencing purposes, that the substance is crystal methamphetamine. *See, e.g., People v. Smith*, 2009 WL 808316, at *1 (Cal. Ct. App. Mar. 30, 2009); *People v.Lawhorn*, 2008 WL 4412284, at *1 (Cal. Ct. App. Sept. 30, 2008). The enhancement need not be proven for *conviction*, and it is not necessarily alleged in all cases involving crystal methamphetamine. *See, e.g., People v. Shellock*, 2007 WL 1874329, at *1 (Cal. Ct. App. June 29, 2007) (describing a methamphetamine conviction where the substance was crystal methamphetamine, but not mentioning the crystal methamphetamine enhancement); *People v. Belasquez*, 2006 WL 171520, at *1 (Cal. Ct. App. Jan. 25, 2005) (same). State courts' practice in applying the sentencing enhancement shows that a conviction for "methamphetamine" may in fact be a conviction for a variant

- in these instances, crystal methamphetamine.

In sum, California [*23] law demonstrates that optical and geometric isomers of methamphetamine are alternative means of committing a single controlled substance offense under California law. The government does not argue otherwise. The overly broad methamphetamine element, therefore, is not divisible. Because the California statute is overbroad and not divisible with respect to the overbroad element, we do not apply the modified categorical approach to determine whether Lorenzo's convictions involved a type of methamphetamine covered by the CSA. As a result, Lorenzo's convictions under §§ **11378** and 11379(a) do not qualify as controlled substance offenses under 8 U.S.C. § 1227(a)(2)(B)(i).

20 ATENIA LORENZO V. SESSIONS

Because the IJ and the BIA did not consider whether Lorenzo was removable on the ground that his § 11379(a) conviction constitutes an "illicit trafficking in a controlled substance" aggravated felony under 8 U.S.C. §§ 1101(a)(43)(B) and 1227(a)(2)(A)(iii), we do not address that question. *See Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004) ("In reviewing the decision of the BIA, we consider only the grounds relied upon by that agency. If we conclude that the BIA's decision cannot be sustained upon its reasoning, we must remand to allow the agency to decide any issues remaining in the case."). If the BIA addresses the government's aggravated [*24] felony theory on remand, it should consider whether that theory suffers from the same flaw as the government's theory of removability under 8 U.S.C. § 1227(a)(2)(B)(i).

**PETITION GRANTED; REMANDED.**

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Howard Broomfield
Reg. No. 03205-112
CI Victorville Medium #1
P.O. Box 3725
Adelanto, Calif 92301

Legal Mail

To: Clerk
the honor
B. Marsha
Court Ju
District
East Te
Los Angel



ld
2
Medium #1
92301

Legal Mail

To: Clerk of the Court for the honorable Judge Consuelo B. Marshall, United States District Court Judge for the Central District of California, East Temple Street, Room 180 Los Angeles, Calif. 90012

Legal Mail

GATE:
FEDERAL CORRECTIONAL COMPLEX
P.O. BOX 5400
C/O MAILROOM
ADELANTO, CA 92301 APR 0 8 RECD
The enclosed letter was processed through
mailing procedures for forwarding to you.
has neither been opened nor inspected. If this
raises a question or problem over which this
has jurisdiction, you may wish to return the
for further information or clarification.
If the writer encloses correspondence for
to another address, please return the enve
to the above address.